# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR VELAZQUEZ; HUMBERTO LOPEZ; RUBEN GARCIA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL MARINE AND INDUSTRIAL APPLICATORS, LLC,<br><br>Defendant. | Case No.: 16cv494-MMA (NLS)<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND**<br><br>[Doc. No. 42]<br><br>**GRANTING MOTION FOR FINAL APPROVAL OF ATTORNEYS' FEES, COSTS & CLASS REPRESENTATIVE ENHANCEMENT**<br><br>[Doc. No. 43] |

Plaintiffs Humberto Lopez and Ruben Garcia (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, move for final approval of class action settlement and for attorneys' fees, costs, and class representative enhancement. Doc. Nos. 42, 43. Both motions are unopposed. Doc. Nos. 44, 45. The Court held a final approval hearing on these matters pursuant to Federal Rule of Civil Procedure 23(e)(2).

1

Doc. No. 47. For the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Final Approval of Attorneys' Fees, Costs, and Class Representative Enhancement.

## BACKGROUND[1]

Plaintiffs Humberto Lopez ("Lopez") and Hector Velazquez ("Velazquez") originally filed this action in superior court on May 7, 2015. Doc. No. 1-2. Velazquez voluntarily dismissed all his claims on September 22, 2015. Doc. No. 1-5. On January 22, 2016, Lopez filed the operative First Amended Complaint ("FAC"). Doc. No. 1-12 ("FAC"). On February 25, 2016, Defendant International Marine and Industrial Applicators, LLC ("IMIA" or "Defendant") removed the action to this Court. Doc. No. 1.

The complaint alleges wage and hour claims against Defendant IMIA, which is a nationwide company that contracts to perform work on ocean going ships—primarily sand blasting and the application of paint and other protective materials. Doc. No. 42-1 at 6; FAC. IMIA has operations in many U.S. shipyards and secures contracts to work on specific ships. Doc. No. 31-1 at 8. Class members work on specific contracts and when those contracts are fulfilled, the workers are no longer needed. *Id.* However, IMIA might have contract work at a different shipyard on a different ship. *Id.* Thus, "[s]ome shipyard workers, including the class members and employees of other companies, travel from city to city to work wherever work is available." *Id.* Many of these workers take these short-term jobs with whichever company has a current contract. *Id.* As a result, the class members move from city to city and switch from working for IMIA to whatever other shipyard company needs their services. *Id.* Plaintiff Lopez is a California resident who worked as a non-exempt employee for Defendant at locations beyond the

---

[1] Unless otherwise specified herein, the Court adopts all defined terms set forth in the Settlement Agreement, which is attached as Exhibit 1 to the declaration of Paul D. Jackson and the Amendment to the Settlement. *See* Doc. Nos. 31-2, 31-3, 40.

commuting distance from his home and Plaintiff Ruben Garcia ("Garcia")[2] is a Texas resident who worked as a non-exempt employee for Defendant in various locations throughout the United States. Doc. No. 42-1 at 6. Plaintiffs allege that when class members travel from one city to another, but worked for IMIA at both locations, they remained IMIA's employees while traveling and should have been paid their hourly wages while traveling. Doc. No. 31-1 at 8-9.

Accordingly, Plaintiffs Lopez and Garcia filed this class action complaint alleging claims for (1) failure to pay wages and overtime compensation for business travel under the California Labor Code; (2) failure to pay wages and overtime compensation for business travel in violation of the Fair Labor Standards Act ("FLSA"); (3) failure to indemnify for necessary expenditures; (4) unfair business practices; and they seek (5) declaratory relief; (6) an accounting; and (7) injunctive relief. *See* FAC. Plaintiffs bring this case on behalf of both a Federal Rule of Civil Procedure 23 Opt-Out Class ("Rule 23 California Class" or "Rule 23 Class") and an FLSA Opt-In Collective Action ("FLSA Non-California Class" or "FLSA Class") on behalf of "all of IMIA's non-exempt employees who were paid a per diem for working at location[s] remote from their home." Doc. No. 31-1 at 7-8; *see also* FAC.

On February 13, 2017, Plaintiffs and Defendant filed a notice of settlement, indicating they were finalizing a Settlement Agreement which would dispose of the action in its entirety. Doc. No. 29. Magistrate Judge Nita L. Stormes ordered the parties to file a motion for preliminary approval of the class action settlement on or before March 20, 2017. Doc. No. 30. Plaintiffs timely filed the finalized Settlement Agreement along with Plaintiffs' unopposed motion for preliminary approval of the class action settlement. Doc. Nos. 31, 32.

---

[2] On June 30, 2017, the Court granted Plaintiff Lopez's request to add Ruben Garcia as a Class Representative in this action. *See* Doc. No. 34 at 1-2.

On June 30, 2017, the Court entered an Order of Preliminary Approval of Class Action Settlement. *See* Doc. No. 34. On December 19, 2017, Plaintiffs filed the instant motions for Final Approval of Class Action Settlement, and Attorneys' Fees, Costs, and Class Representative Enhancement. Doc. Nos. 42, 43. Defendant filed notices of non-opposition to both motions on January 8, 2018. Doc. Nos. 44, 45.

## OVERVIEW OF THE SETTLEMENT

### 1. *Settlement Classes*

The Settlement Agreement proposes both a Rule 23 California Class and an FLSA Non-California Class. *See* Doc. No. 31-3. The Rule 23 California Class is comprised of "all individuals who, while employed in a non-exempt position by Defendant while domiciled in California, traveled to perform a work assignment for Defendant at a remote location outside of California, at any time during the Rule 23 California Class Settlement Period." Doc. No. 31-3 at 8. The Rule 23 California Class Settlement Period "means the period from May 7, 2011 through and including the date of Preliminary Approval." *Id.* at 9. The FLSA Non-California Class is comprised of "all individuals who, while employed in a non-exempt position by Defendant while domiciled in the United States but not domiciled in California, traveled to perform a work assignment for Defendant at a remote location outside of the individual's state of domicile, at any time during the FLSA Non-California Class Settlement Period." *Id.* at 6. The FLSA Non-California Class Settlement Period "means the period from the date three years before the date of Preliminary Approval through and including the date of Preliminary Approval." *Id.* at 7.

### 2. *Settlement Terms*

The proposed settlement provides each Class Member with a proportionate share of the "Net Settlement Fund" based on the number of times the Class Member traveled to or from the Class Member's state of domicile to begin or return from a work assignment for IMIA at a location outside the Class Member's domicile. Doc. No. 31-3 at 9-10. Specifically, IMIA will pay a cash settlement of $26,538.00, (minus applicable taxes) to 144 members of the Settlement Class Members. Doc. No. 42-1 at 13. Any amounts

4

unclaimed by Class Members who fail to participate will be distributed to the participating class members on a pro-rata basis. Doc. No. 31-4 at 7.

The "Net Settlement Fund" or "Net Settlement Amount" means the "Gross Settlement Fund" less Administrative Expenses, Plaintiffs' attorneys' fees and costs, and the total amount of service payments to Plaintiffs. Doc. No. 31-3 at 7. The "Gross Settlement Fund" or "Gross Settlement Amount" means the maximum of $61,000, which will cover the settlement allocation to all Class Members, Plaintiffs' attorneys' fees ($15,250) and costs ($2,500), the total amount of service payments to Plaintiffs ($1,500), and all Administrative Expenses ($15,212). *See id.*; *see also* Doc. No. 40 at 1.

In the Settlement Agreement, Defendants agree not to oppose service payments of up to $1,000 for Plaintiff Lopez and up to $500 for Plaintiff Garcia. Doc. No. 31-3 at 10. Additionally, Defendants agree not to oppose attorneys' fees not to exceed $15,250 and costs not to exceed $2,500. *Id.* at 10-11; *see also* Doc. No. 40 at 2. Accordingly, Plaintiffs request $1,500 in enhancements for Plaintiffs Lopez and Garcia, and an award of $15,250 for attorneys' fees and $2,500 for litigation costs. Doc. No. 43-1 at 4-5.

Pursuant to the Preliminary Approval Order, the Class Notice described the lawsuit and settlement, instructed Class Members how to participate in or opt-out of the settlement, instructed Class members how to object to the settlement, provided details on the final approval hearing and contact information for class counsel, and instructed Class Members how to obtain court records. Doc. No. 31-4 at 2-6.

On July 31, 2017, counsel for Defendant provided Simpluris, the "Settlement Administrator" or "Claims Administrator," with a mailing list ("Class List") containing the name, last known address, Social Security number, and pertinent employment information during the Class Period for the Class Members. Doc. No. 42-3, Declaration of Christina Francisco Regarding Notice and Settlement Administration ("Francisco Decl."), ¶ 6. The Class List contained data for 630 Class members. *Id.* The mailing addresses contained in the Class List were then processed and updated utilizing the National Change of Address Database ("NCOA"). *Id.*, ¶ 7. The Claims Administrator

mailed the Class Notices to the Class on August 17, 2017, utilizing the updated mailing addresses. Doc. No. 42-1 at 8; Francisco Decl., ¶ 8. Specifically, FLSA Notice Packets were mailed via First Class Mail to 519 Class Members and the Rule 23 Notice Packets were mailed to 111 Class Members contained in the Class List. Francisco Decl., ¶ 8. For notices that were returned without a forwarding address, the Claims Administrator performed multiple additional address traces. *Id.*, ¶ 10. Zero (0) Rule 23 Class Notice Packets were returned undeliverable and 41 FLSA Class Notice Packets were returned undeliverable. *Id.*, ¶ 10. Additionally, 335 FLSA Notice Packets and 64 Rule 23 Notice Packets were emailed to Class Members on August 17, 2017. *Id.*, ¶ 9. No objections to the settlement have been made, one member of the Rule 23 Class opted out, and 35 members of the FLSA Class opted in. *Id.*, Exhibit C. The Settlement Administrator's costs in this matter are $15,212. Doc. No. 40 at 2.

The Court finds that this notice procedure afforded adequate protections to Class Members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of the Class Members. The Court finds and determines that the notice provided in this case was the best practicable, which sufficiently satisfied the requirements of law and due process. Finally, the Court **APPROVES** the Settlement Administration costs in the amount of $15,212 as reasonable.

## MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

### 1. *Legal Standard*

Courts require a higher standard of fairness when settlement takes place prior to class certification to ensure class counsel and defendants have not colluded in settling the case. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Ultimately, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is

6

16cv494-MMA (NLS)

fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

A court considers several factors in determining whether a proposed settlement is "fair, reasonable, and adequate" under Rule 23(e). Such factors may include: (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation and the risk of maintaining class action status throughout the trial; (3) the stage of the proceedings (investigation, discovery, and research completed); (4) the settlement amount; (5) whether the class has been fairly and adequately represented during settlement negotiations; and (6) the reaction of the class to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). The Court need only consider some of these factors—namely, those designed to protect absentees. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) (overruled in part on other grounds).

Judicial policy favors settlement in class actions and other forms of complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

**2.**     *Analysis*

   **a.**     **Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation**

To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiffs' case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In other words:

> The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "it has been held proper to take the bird in hand instead of a prospective flock in the bush."

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citations omitted).

Plaintiffs contend "there is risk and significant expense associated with class certification proceedings" and there is no guarantee that a judge or jury would agree that IMIA is liable. Doc. No. 42-1 at 12-13. With respect to class certification, Plaintiffs assert that they believe the case was suitable for certification because there were company-wide policies affecting the Class, which could be established through company documents and representative testimony. *Id.* at 12. However, Plaintiffs acknowledge that IMIA "vigorously contested . . . class certification." *Id.* For example, IMIA maintained that Class Members were not owed any additional wages and that individual issues would predominate over common facts, rendering class certification inappropriate. *Id.* With respect to liability, Plaintiffs concede that no known law or contract provision requires per diem payment. *Id.* In addition, IMIA argues it did not send workers to various locations; rather, IMIA analogizes its workers to migrant farm workers who move wherever work is available and that it was merely coincidental that Class Members obtained back-to-back jobs with IMIA in different areas. *Id.* at 13.

Additionally, if this case were to proceed, "[e]xpert discovery and trial preparation would be expensive and complex." *Id.* at 14. Plaintiffs contend that Defendants would "continue to assert a vigorous defense on liability and class certification" and that "even if Plaintiffs prevailed in establishing liability, additional risks would remain in establishing the amount of damages sustained by the Class." *Id.* The parties would have to expend at least hundreds of "additional hours in attorney time, and spend much more in costs," which would "severely deplete any eventual recovery." *Id.* Moreover, post-trial motions and appeals could delay recovery, further reducing its value. *Id.* Even further, Plaintiffs assert it would be "grossly inefficient" for current and former employees to bring individual actions and the potential recovery would not be high enough to incentivize them to sue individually. *Id.* On the other hand, if this Settlement is approved, "the Court can guarantee recovery for at least 144 Participating Settlement

Class members." *Id.* Based on the foregoing, this factor weighs in favor of approving the settlement.

### b. The Risk of Maintaining Class Action Status Through Trial

Pursuant to Rule 23, the Court may revisit a prior order granting certification of a class at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement. *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012) (finding that the complexity of the case weighed in favor of approving the settlement).

While the Court has certified the Class for purposes of settlement, Plaintiffs assert that "there is no assurance that it would continue to remain certified." Doc. No. 42-1 at 15. Plaintiffs contend that if the Court does not finally approve the settlement, they would need to move for class certification, which IMIA would "vigorously oppose." *Id.* at 15-16. Thus, Plaintiffs state that settlement will avoid substantial costs and the delay and risks presented by further prosecution of this action. *Id.* at 16. Accordingly, there is some risk that the Class would either not be certified or that something may arise before trial that would require the Court to decertify a class. As such, this factor weighs in favor of approving the settlement.

### c. The Stage of the Proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV*, 221 F.R.D. at 528. In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).

Based on the parties' representations, it appears that the Settlement Agreement resulted from arms-length negotiations, and was not the result of collusion. "At the time

that the parties agreed to the terms of a settlement, they had exchanged voluminous written discovery," and fully briefed two motions to compel—one of which Judge Stormes granted [Doc. No. 21], and the other which Judge Stormes granted in part and denied in part [Doc. No. 24]. Doc. No. 42-1 at 7. The parties had been litigating the action for approximately 22 months and conducted "extensive informal investigation and formal discovery." *Id.* at 16. Plaintiffs contend that "the action had proceeded to the point where both Plaintiffs and IMIA had a 'clear view of the strengths and weaknesses of their cases.'" *Id.* (quoting *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985)). Further, "the Settlement was achieved only after protracted and complex arms-length negotiations by experienced counsel and a full day mediation session." *Id.* at 11, 16, 18. As such, this factor favors approval of the settlement.

### d. The Settlement Amount

"In assessing the consideration obtained by the class members in a class action settlement, it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV*, 221 F.R.D. at 527 (internal citation and quotation marks omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citations omitted).

Pursuant to the Settlement Agreement, IMIA must pay a cash settlement of $26,538.00 (minus applicable taxes) to 144 members of the Settlement Class members. *See* Doc. Nos. 31-3 at 4, 7; 40 at 2. Each participating Settlement Class member will be awarded compensation based on the number of trips the Class Member took away from their home area to work for IMIA. *See* Doc. No. 31-1 at 17; *see also* Doc. Nos. 31-3. Plaintiffs contend "[t]his makes the settlement fair and equitable in light of the fact that without individual . . . inquiry, there is no way to determine exactly how much time each class member spent on each trip or what the expenses were for each trip." Doc. No. 31-1 at 17. Further, as the Class Period spans more than four years, the Class Members likely

would only be able to guess at the applicable times and costs. *Id.* All in all, this means that the average recovery under the settlement is approximately $186.89 and the total highest recovery is approximately $836.44. Francisco Decl., ¶ 11. Thus, this factor favors approval.

### e. Fair and Adequate Representation During Settlement Negotiations

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *DIRECTV*, 221 F.R.D. at 528 (internal quotation marks and citation omitted). Class Counsel assert that they have extensive experience in class action litigation, having represented numerous class action lawsuits, and having been certified by numerous courts as adequate class counsel. *See* Doc. No. 42-2, Declaration of Paul D. Jackson in Support of Motion for Final Approval of Class Action Settlement ("Jackson Decl."). Moreover, Class Counsel believe the terms of the settlement are fair, reasonable, and adequate to the Class members. Doc. No. 42-1 at 5. Accordingly, this factor weighs in favor of approval of the settlement.

### f. Class Reaction to the Proposed Settlement

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered. *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class did not file an opposition).

After receiving notice of the proposed settlement, only one member of the Rule 23 Class requested exclusion, and not a single Class Member objected to the settlement. Doc. No. 42-1 at 17; Francisco Decl., ¶ 11-13. Accordingly, this factor favors approval.

**3.** *Conclusion*

Because the factors outlined above favor approving the Settlement, the Court **GRANTS** the motion and finds that the settlement is "fair, reasonable, and adequate" under Rule 23(e).

## MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT AWARD

Plaintiffs seek attorneys' fees, litigation costs, and Class Representative enhancement awards totaling $19,250.[3] *See* Doc. No. 43-1 at 4. As set forth in the Settlement, IMIA agrees not to oppose Plaintiffs' application for an award of reasonable attorneys' fees and litigation costs in an amount not to exceed $17,750 and not to oppose service payments of up to $1,000 for Plaintiff Lopez and up to $500 for Plaintiff Garcia. Doc. No. 31-3 at 10-11; *see also* Doc. No. 40 at 2.

**1.** *Attorneys' Fees*

    **a.** **Relevant Law**

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Under Ninth Circuit precedent, a court has discretion to calculate and award attorneys' fees using either the lodestar method or the percentage-of-the-fund method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002). Despite the discretion afforded to the court, the Ninth Circuit recommends that district courts cross-check the award by

---

[3] Specifically, Plaintiffs seek $15,250 in attorneys' fees, $2,500 in litigation costs, $1,000 in a Class Representative Enhancement award for Plaintiff Lopez, and $500 in a Class Representative Enhancement award for Plaintiff Garcia. Doc. No. 43-1 at 4.

12

applying a second method. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944-45 (9th Cir. 2011).

The Ninth Circuit has held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage-of-the-fund method. *Vizcaino*, 290 F.3d at 1047. "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

With respect to the percentage method, case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small. *See* Rubenstein, Conte and Newberg, *Newberg on Class Actions* at § 15:83. California cases in which the common fund is small tend to award attorneys' fees above the 25% benchmark. *See Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (holding attorneys' fees for large fund cases are typically under 25% and cases below $10 million are often more than the 25% benchmark).

Regardless of whether the Court uses the percentage approach or the lodestar method, the ultimate inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–50.

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941 (internal citation omitted). The Ninth Circuit has cautioned that "to avoid abdicating its responsibility to

review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton*, 327 F.3d at 963.

### b. Analysis

Class Counsel seek attorneys' fees in the amount of $15,250, or 25% of the Settlement Fund. Doc. No. 43-1 at 8. Pursuant to the Settlement Agreement, Defendant has agreed not to oppose this request. *See* Doc. No. 31-3 at 10-11; *see also* Doc. No. 40 at 2. According to Plaintiffs, the requested fees are reasonable given the outcome of the settlement, the response of the Class Members, and that Plaintiffs' counsel have been pursuing this case for over two years on a contingency basis, and have invested a large amount of time and resources into the case. *Id.*

The fact that Defendant does not oppose the fee requested is of little or no concern to the Court. The Ninth Circuit has made clear that "a defendant's advance agreement not to object cannot relieve the district court of its duty to assess fully the reasonableness of the fee request." *In re Bluetooth*, 654 F.3d at 943. "Ordinarily, a defendant is interested only in disposing of the total claim asserted against it, and the allocation between the class payment and the attorneys' fees is of little or no interest to the defense. A district court therefore must ensure that both the amount and mode of payment of attorneys' fees are fair, regardless of whether the attorneys' fees come from a common fund or are otherwise paid." *Id.* (internal citations and quotations omitted).

In this case, Plaintiffs' counsel seek 25% of the Gross Settlement Amount in fees, presumably under the common fund method. Doc. No. 43-1 at 7. However, Plaintiffs also include information regarding the lodestar method. *Id.* Because Plaintiffs' counsel request the benchmark percentage, the Court first assesses the reasonableness of the requested fees by considering the factors set forth above. Then, the Court conducts a lodestar cross-check.

//
//

1. Reasonableness

First, the Court considers the results achieved for the Class Members. *See In re Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained for the class."). Here, the Gross Settlement Amount is $61,000, and the total average recovery is approximately $186.89, with the highest recovery amounting to $836.44. Francisco Decl., ¶ 11. Further, no objections to the settlement have been made, only one member of the Rule 23 Class opted out, and 35 members of the FLSA Class opted in, which represents 0.16% of the Combined Settlement Class and 0.90% of the Rule 23 Class. *Id.*, ¶ 12, Exhibit C. This favors reasonableness.

Second, the Court considers the risks of the litigation. *Vizcaino*, 290 F.3d at 1048-49. Based on Plaintiffs' representations, if the case had proceeded through litigation, there would be a substantial risk that the Class may not be certified or recover at all. Doc. No. 42-1 at 12-16. As noted herein, Plaintiffs highlight legal uncertainties with respect to per diem payment and Defendant's vigorous defenses to liability. *Id.* at 12-13. Accordingly, the second factor favors the reasonableness of the requested fees.

The third through fifth factors ask the Court to consider the skill required and the quality of work, the contingent nature of the fee, and the burdens carried by class counsel. *See Vizcaino*, 290 F.3d at 1049-50. Plaintiffs assert the skills required, the quality of work, and the contingency nature of payment support the requested attorneys' fees. Doc. No. 43-1 at 7. Further, Plaintiffs' Counsel explain that they have been pursuing this case for over two years and have invested a large amount of time and resources into this case, exhibiting a significant burden. *Id.* It appears that Class Counsel were competent in investigating, negotiating, and achieving this Settlement, and that they prosecuted this action on a contingency basis. *See generally* Doc. Nos. 31, 42-1, 43-1. According to Class Counsel's briefing, the lodestar amount for the work performed is $155,008.50. Doc. No. 43-1 at 9. Thus, Class Counsel is only seeking a fraction (less than 10%) of their lodestar figure. *Id.* This indicates that Plaintiffs' counsel carried a significant

burden on a contingent fee basis since 2014, requiring both skill and quality of work. As such, these factors weigh in favor of finding the requested fees reasonable.

Finally, the Court considers awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–50. The 25% award requested in this case is commensurate with percentage-of-the-fund awards made in other wage and hour class actions. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) (finding a benchmark 25% fee was reasonable); *Ontiveros v. Zamora*, 303 F.R.D. 356, 372-75 (E.D. Cal. 2014) (same); *Adoma*, 913 F. Supp. 2d at 982-85 (reducing attorneys' fees award from 33.3% to 29%). Therefore, the final factor also favors finding the fees reasonable.

Based on the foregoing factors, the Court finds that 25% of the common fund is a reasonable amount of attorneys' fees.

### 2. Lodestar Cross-Check

District courts often conduct a lodestar cross-check to ensure that the percentage based fee is reasonable. *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016); *Crawford v. Astrue*, 586 F.3d 1142, 1151 (9th Cir. 2009). The lodestar method multiplies the number of hours reasonably expended by a reasonable hourly rate. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). "The lodestar 'cross-check' need not be as exhaustive as a pure lodestar calculation" because it only "serves as a point of comparison by which to assess the reasonableness of a percentage award." *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *14 (C.D. Cal. July 21, 2008). Accordingly, "the lodestar can be approximate and still serve its purpose." *Id.*

To date, Class Counsel expended 252.30 hours on this matter and Counsel's hourly rates range from $200 to $800. "[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d at 1051. Counsel's requested award, even without a multiplier, is significantly less than what they may be entitled to under the lodestar method. Accordingly, this factor favors approval of the requested attorneys' fees.

16

### c. Conclusion

Because Class Counsel seeks 25% of the settlement fund, and because that amount is reasonable based on the factors outlined above and after conducting a lodestar cross-check, the Court finds the requested attorneys' fees are reasonable. Accordingly, the Court **APPROVES** the requested amount of attorneys' fees in the amount of $15,250.

### 2. *Litigation Expenses*

Class Counsel seeks reimbursement of their costs in the amount of $2,500. Doc. No. 43-1 at 10. Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Class counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)); *Staton*, 327 F.3d at 974.

Pursuant to the Settlement Agreement, IMIA agrees not to oppose Plaintiff's application for an award of "costs and expenses not to exceed $2,500." Doc. No. 31-3 at 10-11. Here, Class Counsel's actual costs were $3,037.95. Doc. No. 43-1 at 10; Jackson Decl., Exhibits 1, 2. Class Counsel's expenses include costs for mediation, research, copying, messenger/delivery fees, and filing fees. Doc. No. 43-1 at 10. Accordingly, because Class Counsel's out-of-pocket expenses were reasonably incurred in connection with the prosecution of this litigation, and were advanced by Class Counsel for the benefit of the Class, the Court **APPROVES** costs in the amount of $2,500.

### 3. *Class Representative Enhancement Awards*

Plaintiffs also moves the Court for an enhancement award for both named Plaintiffs. Doc. No. 43-1 at 10. Specifically, Plaintiffs request an award of $1,000 to Plaintiff Lopez and $500 to Plaintiff Garcia. *Id.* at 12. "Incentive awards are appropriate only to compensate named plaintiffs for work done in the interest of the class as well as to compensate named plaintiffs for their reasonable fear of workplace retaliation." *Chun-*

*Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (citing *Staton*, 327 F.3d at 977). Courts should ensure that an incentive award is not based on fraud or collusion. *Id.*

Plaintiff Lopez has been actively involved in the case since October 2014. Doc. No. 43-1 at 11. Plaintiff Lopez "provided information and documents to Counsel, put Counsel in touch with potential witnesses, and responded to IMIA's Interrogatories and Requests for Production." *Id.*; Jackson Decl., ¶ 14. Plaintiff Garcia stepped forward when Defendant indicated Plaintiff Lopez was not an adequate class representative. *Id.*; Jackson Decl., ¶ 15. Additionally, both Plaintiffs expressed concern that Defendant might retaliate against them for bringing suit. Jackson Decl., ¶ 14. Moreover, the $1,000 and $500 awards make sense in the context of this litigation, where the average Class Member recovery will be $186.89, with the highest recovery amounting to $836.44. Francisco Decl., ¶ 11. Finally, no one has objected to these payments, and the award does not appear to be the result of fraud or collusion. Accordingly, the Court **APPROVES** the $1,000 payment to Plaintiff Lopez and the $500 payment to Plaintiff Garcia as reasonable.

## CONCLUSION

The Court **GRANTS** Plaintiffs' motions and finds the proposed settlement of this class action appropriate for final approval pursuant to Federal Rule of Civil Procedure 23(e). The Court finds that the proposed settlement appears to be the product of serious, informed, arms-length negotiations, and that the settlement was entered into in good faith, and that Plaintiffs have satisfied the standards for final approval of a class action Settlement under federal law. Further, the Court finds the Settlement Administration fees and costs in the amount $15,212 are reasonable. The Court also finds Plaintiffs' request for an award of attorneys' fees in the amount of 25% of the common fund, or $15,250, and the requested costs in the amount of $2,500, are reasonable. Finally, the Court finds the class representative enhancement awards of $1,000 to Plaintiff Lopez and $500 to Plaintiff Garcia are reasonable.

## JUDGMENT AND ORDER OF DISMISSAL

The Court **APPROVES** the Settlement and **ORDERS** the parties to implement the Settlement Agreement according to its terms and conditions and this Court's Final Order.

1. This Court incorporates by reference as though fully set forth herein, the definitions of the Settlement Agreement dated March 14, 2017 and preliminarily approved by the Order signed June 30, 2017, and all terms used herein shall have the same meaning as set forth in the Settlement Agreement.

2. This Court has jurisdiction over the subject matter of the Class Action and over all Parties to the Class Action, including all Members of the Settlement Class.

3. Notice to the Settlement Class, as set forth in the Settlement Agreement, has been completed pursuant to the Preliminary Order, including individual notice to all Class Members. The Court finds that said notice was practicable under the circumstances. The Class Notice provided due and adequate notice of the proceedings and the matters set forth herein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice, and the Notice of Class Action form fully satisfied the requirements of due process.

4. This Court hereby approves the settlement set forth in the Settlement Agreement, including the settlement awards, released claims and other terms therein, and finds that the Settlement Agreement is, in all respects, fair, reasonable, and adequate to the Parties and directs the Parties to effectuate the settlement according to its terms.

5. For the purposes of this Order and Final Judgment, and consistent with the Settlement Agreement, the term "Settlement Class" means the following: the Rule 23 California Class plus the FLSA Non-California Class.

6. As of the Effective Date, (and after all settlement checks, fee checks, and cost and enhancement payments have been made) each and every Released Claim of each and every Settlement Class Member, as of the date of the Settlement Agreement, is and shall be deemed to be conclusively released (as more fully described in the Settlement Agreement and Release) as against the Released Parties.

7. All of the Settlement Class Members, as of the Effective Date of Settlement, are hereby forever barred and enjoined from prosecuting the Released Claims against the Released Parties.

8. The Settlement Agreement is not an admission by Defendant nor is this Order and Final Judgment a finding of the validity of any claims in the Class Action or of any wrongdoing by Defendant. Furthermore, the Settlement Agreement is not a concession by Defendant and shall not be used as an admission of any fault, omission or wrongdoing by Defendant.

9. The Class Action is hereby **DISMISSED WITH PREJUDICE**, provided however, and without affecting the finality of this Order and Final Judgment in any way, this Court hereby retains continuing jurisdiction over: (i) interpretation, implementation, and enforcement of this settlement; and (ii) enforcement and administration of the Settlement Agreement.

10. The Court finds that the Settlement Agreement is in good faith and constitutes a fair, reasonable, and adequate compromise of the Released Claims against Defendant.

The Clerk of Court is instructed to enter final judgment in accordance with this Order.

**IT IS SO ORDERED**.

Dated: February 9, 2018

Hon. Michael M. Anello
United States District Judge